## AFFIDAVIT IN SUPPORT
## OF CRIMINAL COMPLAINT

I, Steven Greenleaf, depose and make this affidavit in support of a complaint for violations of 36 CFR § 423(a)(1)(Operating a Motor While Under the Influence of Alcohol and 36 CFR § 4.23(a)(2)(Operating a Motor Vehicle with a Blood Alcohol Content Greater Than or Equal to 0.08) by Eric Amos JIPSON III. I have worked as a law enforcement ranger for the National Park Service for over six years in both Alaska and Maine where I work on archaeological resource, vandalism, and arson investigations. I completed the Seasonal Law Enforcement Academy in 2018 and the Federal Law Enforcement Training Center (FLETC) training in 2020. I have completed the National Highway Traffic and Safety Administration class on standardized field sobriety testing. Prior to this, I served over sixteen years in the U.S. Air Force as a supervisor within the Civil Engineering squadron. I have a Bachelor of Science degree in Anthropology with minors in Forensic Sciences and Classical Studies. I base this affidavit on my own investigation as well as discussions with other agents and/or reading of investigative reports and other materials.

On June 27, 2024, at approximately 2037 hours, Acadia Dispatch relayed a report from Hancock Regional Communication Center (HRCC) that a lifted black truck was driving near Sand Beach. The truck was reported to be driving over 50 mph and had crashed through cones. I, along with Ranger A. COLON, were on patrol near the base of Cadillac Mountain and immediately responded to the call and began driving toward Sand Beach.

At approximately 2044 hours, HRCC reported that a black truck, matching the description of the truck that was reported to be speeding, went off the road along the

1

Park Loop Road just north of Blackwoods Campground. They also reported that two passengers were walking out of the woods. I suspected possible driving under the influence of alcohol based on the reports of speed, crashing through cones, and driving off the road.

While driving through the construction zone on the Otter Creek Causeway just before the site of the vehicle crash, I observed hazard lights near the edge of the water at the base of a steep cliff approximately a half mile past the causeway. COLON and I drove with lights and sirens arriving on scene at approximately 2051 hours. I immediately observed coping stones along the roadway that had been displaced. This was at the top of a steep embankment approximately 35 feet high. I yelled down to see how many people there were. Someone yelled up that there were four people and two of them were from the vehicle. I attempted to find a rope to assist with getting down the embankment, but was unable to find one. COLON and I made our way down the steep embankment and found out that two people were on a small boat and came to help.

I identified the two occupants of the vehicle and talked with them. COLON took the passenger, identified as Justin M. WEAVER via his driver's license, and evaluated him for medical concerns. I talked with the driver who was identified by name and DOB as Eric A. JIPSON. JIPSON identified himself as the driver of the black truck. I asked if he had anything to drink and he responded in the negative. JIPSON was found sitting on large rocks and was holding his arm. While talking with him, I could hear slow and slurred speech along with regular cursing. His physical responses were slow and his body position was slouched. He stated that nothing hurt. I assessed his heart rate, which was elevated, and other physical assessments. I observed that he had blood shot eyes.

2

JIPSON stated that he was driving approximately 35-40 mph and "all of a sudden a corner came up" where he "went straight through it." The location of the crash site is on a straight section of road approximately a half mile past a curve on the Otter Creek Causeway. The Causeway is currently under construction and is a 25 mph zone. At the time of the vehicle crash, it was dark and raining.

I attempted to find his driver's license in the truck, but was unable. While I was looking for his driver's license, JIPSON informed me that there was a loaded pistol in the center console of the truck. I located the pistol in the glove box. The pistol was a 9mm Glock [SN: AFSH615]. The pistol was in a holster with the magazine inserted. I handed it to COLON who cleared it stating that the magazine had ammunition in it and the chamber was empty.

I spoke with Bar Harbor Officer BURN who stated that he identified slurred speech and smelled the odor of alcoholic beverage coming from the driver. Ranger COLON stated to me that WEAVER told him they had stopped and had a few drinks, alcoholic beverages, before driving. I asked JIPSON if they were at the bar before driving there. JIPSON stated that they were at "131" then were driving. When asked how much he had to drink, JIPSON stated two drinks of Tidos (Vodka) and Red Bull.

JIPSON and I then moved up the embankment using a rope that the fire department had placed to climb up. Mount Desert EMS provided medical care and evaluation to both JIPSON and WEAVER. They were medically cleared by EMS. I performed Standardized Field Sobriety Tests (SFST) on JIPSON on the roadway in front of my vehicle beginning at approximately 2130 hours. JIPSON gave permission for me to search him. I removed some personal items and gave them to COLON during the tests.

Prior to the test, while near the vehicle crash, I evaluated JIPSON's eyes, legs, and head. JIPSON stated he was not wearing contacts and did not have natural nystagmus. I began with the Horizontal Gaze Nystagmus (HGN) test. While providing instruction to stand with feet together and hands to his side, JIPSON had difficulty following directions and maintaining the position. JIPSON also swayed throughout the test. JIPSON's left and right eyes tracked together and were jerky from side to side as he attempted to follow the stimulus of my pen. Both of JIPSON's eyes showed nystagmus at maximum deviation. Both of JIPSON's eyes showed the onset of nystagmus prior to 45 degrees. JIPSON did not display nystagmus during the Vertical Gaze Nystagmus (VGN) test due to not being able to fully follow the stimulus vertically. HGN test results of four or more clues indicates 88% accuracy in identifying a Blood Alcohol Level of greater than 0.08 based on the Sand Diego Field Validation Study of SFST. JIPSON displayed six clues.

I then began the Walk and Turn test. During the instruction stage, JIPSON was unable to remain in a heal to toe position. I had to ask him to get back in position several times, as well as ask him to keep his hands down at his side. JIPSON also started prior to being instructed to do so during the instruction stage. After being told to begin, JIPSON did not count out loud until asked to, did not maintain heal to toe steps, stopped walking to steady himself, lost balance while walking, turned incorrectly, did not perform the requested number of steps (nine) in either direction, and stepped off the line more than three times. The Walk and Turn test results of two or more clues indicates 79% accuracy in identifying a Blood Alcohol Level of greater than 0.08 based on the Sand Diego Field Validation Study of SFST. JIPSON displayed 8 clues.

I then began the One Leg Stand test. JIPSON was able to follow instructions of standing with his feet together and hands at his side while I gave instructions. Once I instructed him to begin, JIPSON raised his leg and immediately put his foot down. He then continued, but did not count. He was also swaying while standing. I directed him to count and he did as instructed until he lost balance and placed his foot down again. He then stood as if he completed the test with his hands up front and both feet on the ground. I asked if he was done counting and he stated "1006?" The last number he stated was "1008." He was unable to complete the test due to his inability to follow instructions.

I then started a new One Leg Stand test. JIPSON put his foot down five times, did not continue looking at his foot as instructed, and took a large step backwards before he counted to "1011." Once he counted to "1011," he stood with his hands folded in front of his body and looked straight ahead as though he had concluded the test. The One Leg Stand test results of two or more clues indicates 83% accuracy in identifying a Blood Alcohol Level of greater than 0.08 based on the Sand Diego Field Validation Study of SFST. JIPSON displayed four clues. All three tests together indicate a 91% accuracy in identifying a Blood Alcohol Level of greater than 0.08 based on the Sand Diego Field Validation Study of SFST.

JIPSON agreed to perform a breath test for alcohol, which was performed at approximately 2148 hours. He first breathed in from the tube rather than out as instructed. Once performed, the indicated alcohol level was shown on the screen of the Intoximeters device as .178, which is above the legal limit of 0.08. I had COLON conduct a second breath test, which indicated .176.

5

JIPSON agreed to be transported to MDI Hospital in Bar Harbor by Mount Desert ambulance to volunteer a blood sample. The blood sample kit was provided by Bar Harbor PD and Nurse JUDSON performed the blood draw at MDI Hospital in the presence of both COLON and myself. While at the hospital at approximately 2300 hours, Doctor FLOWERS MD provided me a note that stated the blood alcohol level of JIPSON's blood was 217.7 mg/dL (0.2177 BAC).

Once JIPSON was medically released from MDI Hospital at approximately 0104 hours on June 28, 2024, I arrested, searched, and transported JIPSON to the Hancock County Jail. JIPSON was cooperative with law enforcement and medical staff throughout the entire incident and investigation.

Based on my training and experience, and supported by the foregoing facts, I have probable cause to believe the defendant has violated 36 CFR § 423(a)(1)(Operating a Motor While Under the Influence of Alcohol) and 36 CFR § 4.23(a)(2)(Operating a Motor Vehicle with a Blood Alcohol Content Greater Than or Equal to 0.08).

I, Steven Greenleaf, hereby swear under oath that the information set forth in this affidavit is true and correct to the best of my knowledge, information, and belief, and that I make this oath under pains and penalties of perjury.

Dated at Bangor, Maine, this 28th day of June 2024.

*Steven Greenleaf* 6-28-24
Steven Greenleaf, Park Ranger
National Park Service

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Jun 28 2024

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
*Printed name and title*

7